CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED
4/24/2018
JULIA C. DUDLEY, CLERK
BY: S/J.Vasquez
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff-Appellee, | ) |
| v. | ) Case No. 5:17-cr-00010 |
| JULIAN E. HUMPHREYS, | ) By: Elizabeth K. Dillon |
| Defendant-Appellant. | ) United States District Judge |

**MEMORANDUM OPINION**

Defendant Julian E. Humphreys was convicted by a magistrate judge of speeding in the Shenandoah National Park on November 20, 2016, in violation of 36 C.F.R. § 4.21(c). Humphreys appeals his conviction, arguing that it cannot stand because the evidence was insufficient to show that his vehicle was the speeding vehicle in question. For the reasons below, the court rejects his argument and will affirm his conviction.

I. BACKGROUND

**A. Humphreys is charged with speeding.**

At approximately 1:15 p.m. on November 20, 2016, Shenandoah National Park Service Ranger Eric Yount was driving northbound when he observed Humphreys driving southbound near milepost 17 on Skyline Drive. (Violation Notice 1, Dkt. No. 12-1.) In particular, he observed Humphreys, who was driving a gray Audi, travelling at about 60 miles per hour in a 35-mile-per-hour zone. (*Id.*) Yount activated his Raptor radar, which he had calibrated that morning, and it confirmed that Humphreys was driving 61 miles per hour. (*Id.*; *see also* Trial Tr. 5–6, Dkt. No. 6.)

After pulling Humphreys over, Yount identified him by his Virginia driver's license, and he issued Humphreys a violation notice for exceeding the posted speed limit in a National Park area, in violation of 36 C.F.R. § 4.21(c). (Violation Notice 1.) The notice lists Humphreys' address, phone number, date of birth, sex, height, and eye color, as well as the color and make of his vehicle. (*Id.*) The probable cause statement within the notice incorrectly lists the driver's name as "Eric J. Humphreys," and the "defendant information" section incorrectly lists his first name as Humphreys, his last name as Eric, and his middle initial as "J." (*Id.*)

**B. Humphreys is convicted of speeding.**

The violation notice provided that Humphreys was to pay a $180 forfeiture amount, together with a $30 processing fee, or appear in court. (*Id.*) On April 11, 2017, Humphreys appeared before Magistrate Judge Joel C. Hoppe and proceeded to trial on the speeding charge. (Trial Tr. 1–2.)

The government called one witness: Ranger Yount. (*Id.* at 10.) He testified that he was driving northbound near mile marker 17 on Skyline Drive when he observed a gray Audi headed southbound that appeared to be travelling at approximately 60 miles per hour. (*Id.* at 5.) Yount asserted that "numerous signs" posted in the area along Skyline Drive alert motorists to the speed limit of 35 miles per hour. (*Id.*) After visually observing the Audi, Yount activated his Raptor radar, which he had calibrated that morning, and it confirmed that the vehicle was travelling at 61 miles per hour. (*Id.*) Yount testified that at this point, the Audi drove past him, and Yount observed a single male inside. He turned his car around and proceeded to stop the Audi. (*Id.* at 6.) Yount testified that he identified Humphreys using his Virginia driver's license, and he identified Humphreys in the courtroom as well. (*Id.*)

On cross-examination, Yount conceded that he did not maintain visual contact with Humphreys' vehicle "the entire time." (*Id*. at 9.) Yount noted that he was initially headed in the opposite direction as Humphreys, and so he had to turn his vehicle around, but he went on to explain that "traffic was light that day at that area where I saw your vehicle [and] I did not see a vehicle immediately in front of you." (*Id.* at 9–10.) Additionally, Yount acknowledged that he entered Humphreys' name on the violation notice incorrectly; he "somehow transposed [Humphreys'] middle and first name" and wrote the "middle and the last name in the wrong block." (*Id.* at 12.)

Humphreys testified in his own defense. He asserted that on November 20, 2016, he pulled out from an overlook where he had been parked on Skyline Drive and drove "around a sharp turn." (*Id.* at 14.) According to Humphreys, "As I was going straight, I passed [Yount] headed in the opposite direction . . . ." (*Id.*) He maintained that both he and the driver of a car in front of him were going the speed limit, but Yount "must have gone down and done a U-turn" and then pulled Humphreys over. (*Id.* at 15.) As a whole, Humphreys posited that "[t]he car that [Yount] witnessed going in one direction was a different car, something," and that "for whatever reason, [Yount's] attention may have been distracted, as shown by errors in the charging document." (*Id.*)

After hearing argument from both parties as to whether the evidence proved the charge, the magistrate judge found Humphreys guilty of speeding by driving 61 miles per hour in a 35-mile-per-hour zone. (*Id.* at 21.) The magistrate judge concluded that the evidence was sufficient to prove that Humphreys was speeding. He reached this conclusion because "[t]here was no evidence that . . . there was another car of a similar make and model that [was] somehow in between your car and the ranger after he turned around." (*Id.* at 20.) The magistrate judge

emphasized that "I don't have any—any evidence that shows that the ranger made a mistake in pulling over your car as the one that he identified as going 61 miles an hour." (*Id.*) Last, he distinguished Yount's "clerical error" of mixing up Humphreys' name from the issue of "being able to identify . . . the speed that a car was" driving. (*Id.*)

The magistrate judge concluded that the standard forfeiture amount was appropriate in the case. Thus, he imposed a $170 fine, a $30 processing fee, and a $10 special assessment, for a total of $210. (*Id.* at 21–22.) The magistrate judge then notified Humphreys of his right to appeal the finding. Humphreys indicated that he would likely appeal, but that he could pay the fine that day. (*Id.* at 22.)

Humphreys then appealed the magistrate judge's finding of guilt.

## II. STANDARD OF REVIEW

"An appellate review conducted by a district court after a bench trial before a magistrate judge is not a trial de novo; rather, the district court utilizes the same standards of review applied by a court of appeals in assessing a district court conviction." *United States v. Bursey*, 416 F.3d 301, 305 (4th Cir. 2005); *see also* Fed. R. Crim. P. 58(g)(2)(D). A district court accordingly reviews a magistrate judge's factual findings for clear error and his legal conclusions de novo. *Bursey*, 416 at 306. "Where a defendant challenges the sufficiency of the evidence supporting a conviction, [the reviewing court] view[s] the evidence in the light most favorable to the government and uphold[s] the verdict if substantial evidence supports it." *United States v. Adepoju*, 756 F.3d 250, 254 (4th Cir. 2014). "Substantial evidence is that which 'a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt.'" *United States v. Reed*, 780 F.3d 260, 269–70 (4th Cir. 2015) (quoting *United States v. Hassan*, 742 F.3d 104, 139 (4th Cir. 2014)). A defendant mounting a

4

sufficiency-of-evidence challenge "faces a heavy burden," and the reviewing court reverses only where the government's "failure is clear." *Adepoju*, 756 F.3d at 254 (internal quotation marks and citations omitted).

### III. DISCUSSION

Humphreys raises one issue on appeal: whether the evidence was sufficient to prove that his vehicle was in fact the speeding vehicle that the Park Ranger identified. (Appellant's Br. 1–3, Dkt. No. 11.) Humphreys argues that Yount's "testimony dictates an entirely different area and vehicle than [Humphreys'] testimony," and that he "was in a different area entirely and could not have been the speeding vehicle in question." (*Id.* at 3.)

At the outset, the court notes that Humphreys' statement of facts in his grounds of appeal memorandum misrepresents both his own and Yount's trial testimony in key aspects. First, Humphreys submits that he "testified that [he] was parked and stationery at an overlook parking area as the Park Ranger passed him." (*Id.* at 1.) But Humphreys testified at trial that he had been driving in the opposite direction at the time: "I pulled out from the overlook [and] [a]s I was going straight, I passed an officer headed in the opposite direction" (Trial Tr. 14); "It is my position that . . . there was a mistake made. I was parked in an overlook. I pulled out. I went around the turn. I passed a ranger," (*id.* at 19). Second, Humphreys argues that Yount "testified that he lost line-of-sight of the vehicle in question at two occurrences," because Yount "testified that he had to turn around two times before placing the stop." (Appellant's Br. 1–2.) But Yount testified to no such thing; instead, he testified that "I turned around to initiate a traffic stop." (Trial Tr. 6.) Nor does Humphreys' testimony indicate an additional U-turn: "As I passed [Yount], he must have gone down and done a U-turn, around the turn, and come back, then coming up on my car" (*id.* at 15); "I passed a ranger. A ranger that went and turned around and

5

came behind me and pulled me over," (*id.* at 19). Third, Humphreys asserts that Yount's "testimony did not properly identify the 'area in question' as the same area [Humphreys] was located in." (Appellant's Br. 2.) But Humphreys himself testified that "[a]s I was going straight, I passed an officer headed in the opposite direction, who I identify as the officer here in the courtroom today." (Trial Tr. 14.) No evidence was presented that would suggest that Humphreys was in an entirely different "area" when Yount observed him speeding.

Based on these alleged testimonial statements, Humphreys essentially asserts that the evidence was insufficient to prove that his vehicle was the vehicle that Yount observed speeding and that therefore his conviction should be reversed. (Appellant's Br. 3.) But the court "view[s] the evidence and the reasonable inferences to be drawn therefrom in the light most favorable to the [g]overnment" in order to determine whether "the evidence *adduced at trial* could support any rational determination of guilty beyond a reasonable doubt." *United States v. Young*, 609 F.3d 348, 355 (4th Cir. 2010) (internal citations and quotations omitted) (emphasis added). Not only was there an absence of evidence at trial—as noted by the magistrate judge (Trial Tr. 20)—that would support Humphreys' assertions, but Humphreys' and Yount's testimony directly contradict Humphreys' rendering of the facts in his grounds of appeal. *See Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985) (explaining that while *pro se* litigants "cannot . . . be expected to frame legal issues with the clarity and precision ideally evident in the work of those trained in law," they still must "fairly present[]" issues to the district court).

The court has carefully reviewed the testimony and the violation notice. The court agrees with the magistrate judge that there is simply no evidence to support Humphreys' theory that the vehicle Yount observed speeding was different from Humphreys' vehicle, and it agrees that Yount's transposing Humphreys' name has no bearing upon his ability to observe Humphreys'

6

car. To the contrary, construing that evidence in the light most favorable to the government, a reasonable finder of fact could have found beyond a reasonable doubt that Humphreys was speeding. Yount identified Humphreys' vehicle and speed both visually and using his calibrated radar. *See United States v. Sowards*, 690 F.3d 583, 591 (4th Cir. 2012) (reasoning that officer's visual speed estimate is sufficient to satisfy probable cause); *United States v. Wornom*, 754 F. Supp. 517, 519-20 (W.D. Va. 1991) (holding that officer's visual speed estimate was sufficient to prove speeding violation). Humphreys has not shown that the magistrate judge clearly erred as to the facts of the case or committed an error of law. *See Bursey*, 416 F.3d at 305.

## IV. CONCLUSION

For the foregoing reasons, the court finds no error in the judgment of the magistrate judge. It will therefore affirm Humphreys' conviction for speeding on November 20, 2016.

An appropriate order will follow.

Entered: April 24, 2018.

/s/ *Elizabeth K. Dillon*

Elizabeth K. Dillon
United States District Judge